# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

SOLANGE SOL, et al.,               *

           Plaintiffs      *

       v.                 *      Civil Case No. 8:22-cv-02999-AAQ

M&T BANK, et al.,           *

           Defendants     *

## MEMORANDUM OPINION AND ORDER

This case involves an alleged scheme to defraud a business and one of its owners.  Plaintiffs Solange Sol and Gated Enterprise, LLC have filed suit against Defendants Obed Longang, Meme Mulugeta, and M&T Bank, advancing claims under the Racketeering Influenced and Corrupt Organizations Act, the Maryland Uniform Commercial Code, the Maryland Consumer Protection Act, as well as several state tort claims.  Pending before the Court are Defendant Meme Mulugeta's Motion to Dismiss (ECF No. 39), Defendant M&T Bank's Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 40), Defendant Obed Jipmou Longang's Motion to Dismiss (ECF No. 69),[1] and Plaintiffs Solange Sol's and Gated Enterprise's Motion for Leave to Amend the Complaint (ECF No. 43).  The Motions have been fully briefed, and a hearing is not necessary under this Court's Local Rules.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons discussed

---

[1] Mr. Longang's Motion to Dismiss was untimely filed.  *See* ECF No. 56 (ordering that Mr. Longang shall file any Motion to Dismiss by October 1, 2023); ECF No. 69 (filing Motion to Dismiss on October 3, 2023).  Plaintiffs argue that Mr. Longang's Motion to Dismiss should be denied because of its untimeliness.  ECF No. 72, at 2.  The Court will not deny the Motion for being two days late.  *See, e.g.*, *Aviles-Cervantes v. Outside Unlimited, Inc.*, 276. F. Supp. 3d 480, 487 (D. Md. Sept. 7, 2017) (suggesting courts have discretion to consider untimely filed Rule 12(b)(6) motions).

below, M&T Bank's Motion to Dismiss is GRANTED, in part, and DENIED, in part; Ms. Mulugeta's Motion to Dismiss is GRANTED; Mr. Longang's Motion to Dismiss is GRANTED, in part, and DENIED, in part; and Plaintiffs' Motion for Leave to Amend is GRANTED, in part.[2] The parties shall file a Joint Status Report within 14 days with a Proposed Schedule, or stating why a Scheduling Order is inappropriate at this time.

## BACKGROUND

The following facts are set forth in Plaintiffs' Proposed Third Amended Complaint ("Third Amended Complaint").  Ms. Sol founded Gated Enterprise, LLC ("Gated Enterprise") in August 2020 as a business offering in-home care services to seniors.  ECF No. 43-3, at ¶¶ 11, 17.  At some point after Gated Enterprise's founding, Ms. Sol brought Mr. Longang onboard to manage the business's finances.  *Id.* at ¶ 19.  Although Ms. Sol and Mr. Longang discussed the possibility of Mr. Longang becoming a member of Gated Enterprise, according to Plaintiffs, no paperwork was executed establishing a formal partnership between Ms. Sol and Mr. Longang.  *Id.* at ¶ 23.  At some point, Ms. Sol and Mr. Longang opened a checking account for Gated Enterprise at the Greenbelt, MD branch of M&T Bank.  *Id.* at ¶¶ 12, 83-84.  Ms. Sol "vividly" remembers "agreeing to have [Mr.] Longang added as a joint account holder and authorized signer on the account."  *Id.* at ¶ 84.

In May 2022, Ms. Sol allegedly discovered a file in Gated Enterprise's office containing her personal information and a loan application submitted to M&T Bank dated December 22, 2021, including her signature, social security number, and driver's license.  *Id.* at ¶¶ 24, 42.  Ms. Sol alleges that the signature was clearly forged, that she was not aware of any loan application on

---

[2] Separately, now that counsel has entered an appearance on his behalf, Defendant Longang's Motion to Vacate the Clerk's Entry of Default, ECF No. 63, will be granted, as well.

behalf of Gated Enterprise, and that she was not in the United States on December 22, 2021.  *Id.* at ¶¶ 25-28.  Ms. Sol alleges that when she confronted Mr. Longang about the application, he "admitted he submitted the documents to M&T Bank" but told her that the loan had not yet been approved.  *Id.* at ¶ 31.

In November 2022, Ms. Sol visited M&T Bank to review Gated Enterprise's bank account. *Id.* at ¶ 32.  A bank employee informed her that she was the only person who had accessed the account.  *Id.* at ¶ 33.  Because Ms. Sol was under the impression that Mr. Longang was actively using the account, she asked the employee to investigate the account, including the status of the loan application she had discovered.  *Id.* at ¶¶ 34-35.  The bank employee informed Ms. Sol that M&T Bank had approved the loan application in February 2022, *id.* at ¶ 36, and that Ms. Mulugeta had processed the application.  *Id.* at ¶ 37.

Ms. Sol additionally requested copies of all checks written from the company's bank account.  *Id.* at ¶ 48.  Ms. Sol alleges that she discovered that Mr. Longang had signed Ms. Sol's name on dozens of checks withdrawing money from the account.  *Id.* at ¶ 50.  Multiple checks were written to an entity called Gate LLC, which Plaintiffs allege is a fictitious business entity Mr. Longang created to withdraw money from Gated Enterprise's account for his personal use.  *Id.* at ¶ 116.  The allegedly forged checks made out to Gate LLC total over $700,000 worth of withdrawals from Gated Enterprise's account.  *Id.* at ¶ 234.  Several checks were also made out to payees whom Plaintiffs allege Gated Enterprise never employed.  *Id.* at ¶ 121.  Altogether, Plaintiffs allege that Mr. Longang forged Ms. Sol's signature on 178 checks.  *Id.* at ¶ 150.  Ms. Sol also noticed several checks that M&T Bank accepted and cashed that did not contain any signature. *Id.* at ¶ 117.

Ms. Sol attempted to contact Ms. Mulugeta, the manager at M&T Bank's Greenbelt branch who allegedly processed the forged loan application. *Id.* at ¶ 65. According to the Third Amended Complaint, on the day that Ms. Sol and her husband scheduled an appointment with Ms. Mulugeta at M&T Bank, Ms. Sol's husband received a call from Mr. Longang during which Mr. Longang told Ms. Sol's husband that Ms. Mulugeta was no longer available for their appointment. *Id.* at ¶ 66. Ms. Sol's husband asked Mr. Longang how he knew about the scheduled appointment, to which Mr. Longang allegedly provided no response. *Id.* at ¶ 67. Plaintiffs allege that on both this day, and on a second day when Ms. Sol and her husband attempted to schedule a meeting with Ms. Mulugeta, Ms. Mulugeta did not appear for their appointment. *Id.* at ¶¶ 68-73. On November 7, 2022, Ms. Sol visited the Laurel branch of M&T Bank to discuss her concerns regarding the account. *Id.* at ¶ 76. A bank employee confirmed that Ms. Sol was the only account holder and that Mr. Longang had never been added to the account. *Id.* at ¶¶ 78-84. The bank employee then printed out a copy of all transactions on the account for the last three months, highlighted those that Ms. Sol did not recognize, and informed Ms. Sol that she would investigate the matter further and follow up. *Id.* at ¶¶ 85-86. Before she did, the remaining balance in the account was withdrawn. *Id.* at ¶ 87-88. After Ms. Sol reported the withdrawals to M&T Bank's fraud department, Ms. Mulugeta called Ms. Sol and informed her that Mr. Longang's paperwork, which would have authorized his access to the account, "did not go through." *Id.* at ¶¶ 89, 98, 101.

On December 7, 2022, Ms. Mulugeta again contacted Ms. Sol to inform her that a credit card had been opened in Gated Enterprise's name, and in order to close the card, Ms. Sol needed to pay the outstanding balance of $712.72. *Id.* at ¶ 130. Though Ms. Sol was unaware of the card, she paid $712.72 to close the account. *Id.* at ¶¶ 131-33. Ms. Sol questioned Ms. Mulugeta as to why the bank processed the loan application and credit card applications in Ms. Sol's name that

Mr. Longang submitted.  *Id.* at ¶ 134.  Ms. Mulugeta allegedly told Ms. Sol that the bank believed that Mr. Longang submitted the applications at Ms. Sol's direction, but then "blurted out '[Ms. Sol], I am now scared because I am in another business with him, and I do not know what to do.'" *Id.* at ¶ 135, 137.  Based on this interaction, and the belief that Ms. Mulugeta processed the forged checks, Plaintiffs allege that Mr. Longang and Ms. Mulugeta were working together to defraud Ms. Sol and steal money from Gated Enterprise.  *Id.* at ¶ 159.

The Third Amended Complaint additionally alleges that Mr. Longang took further actions, aimed at transferring control of Gated Enterprise from Ms. Sol to himself.  On January 5, 2023, Mr. Longang allegedly filed a report with the Maryland Department of Taxation changing Gated Enterprise's resident agent from Ms. Sol to himself.  *Id.* at ¶ 169.  Mr. Longang also allegedly forged Ms. Sol's signature on a document stating he owned 80% of Gated Enterprise and directed Comfort Keepers LLC, of which Gated Enterprise is a franchisee, to terminate their contract with Ms. Sol and instead work with Mr. Longang.  *Id.* at ¶ 228.  The Third Amended Complaint alleges that, as a result, Comfort Keepers distributed business opportunities to Mr. Longang rather than Ms. Sol.  *Id.* at ¶ 254.

In November 2022, Ms. Sol filed the instant case, naming M&T Bank as a Defendant.  ECF No. 1.  In March 2023, Ms. Sol filed her First Amended Complaint, adding Mr. Longang and Ms. Mulugeta as Defendants.  ECF No. 12.  In May 2023, Ms. Sol again amended her Complaint, adding Gated Enterprise, LLC as a Plaintiff.  ECF No. 34.  Each of the three Defendants has filed a Motion to Dismiss.  ECF Nos. 39, 40, 69.  In opposition, Plaintiffs have moved for leave to file the Third Amended Complaint, which Ms. Mulugeta and M&T Bank likewise oppose.  ECF Nos. 43, 44, 46, 47.

## LEGAL STANDARDS

## I.      Motions to Dismiss

Fed. R. Civ. P. 12(b) provides that a party may move to dismiss where the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  When ruling on a motion to dismiss, the court considers whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court will consider whether the plaintiff has pled factual content allowing reasonable inferences to be drawn that the defendant is "liable for the misconduct alleged."  *Id.*  The plaintiff need not plead facts that are probable but must present facts showcasing more than a "sheer possibility" that the defendant's conduct is unlawful.  *Id.*  The plaintiff has an obligation to provide more than "a formulaic recitation of the elements of a cause of action."  *Twombly,* 550 U.S. at 555.  Pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth."  *Iqbal,* 556 U.S. at 679.

## II.     Allegations of Fraud

Allegations of fraud, which Plaintiffs raise in this case, are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b).  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  This typically requires a plaintiff's allegations to "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313-14 (D. Md. 2000) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F. Supp. 273, 280 (D. Md. 1983)) (alteration in original).  Rule 9(b)'s purposes "are to provide the defendant with sufficient notice of the basis for

6

the plaintiff's claim, to protect the defendant against frivolous suits, to eliminate fraud actions where all of the facts are learned only after discovery, and to safeguard the defendant's reputation." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 586 (D. Md. 2014) (citing *Harrison,* 176 F.3d at 784). Accordingly, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant[s were] made aware of the particular circumstances for which [they] will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.* (quoting *Harrison,* 176 F.3d at 784) (alterations in original).

### III.    Motions for Leave to Amend

Fed. R. Civ. P. 15(a) permits a party to amend its pleadings once as a matter of course, and after this, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). Courts apply a liberal standard to motions to amend complaints, "freely giv[ing] leave [to amend] when justice so requires." *Id.* A court should deny a motion for leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)) (emphasis omitted). Futile amendments are those that are "clearly insufficient or frivolous on [their] face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). A motion for leave to amend should be denied as futile where the proposed amendments cannot survive a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

### IV.    Converting Motions to Dismiss to Motions for Summary Judgment

Fed. R. Civ. P. 12(d) provides that "[i]f, on a Motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Rule 12(d) gives a court "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it, or simply not consider it."  *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012).  In determining whether to exercise its discretion to convert a motion to dismiss into one for summary judgment, a court should exercise "great caution" and consider whether conversion "is likely to facilitate the disposition of the action . . . [and] whether discovery prior to the utilization of the summary judgment procedure is necessary."  *Id.*

## ANALYSIS

### I.  Applicable Standard of Review

As a threshold issue, M&T Bank's Motion to Dismiss is captioned, in the alternative, as a Motion for Summary Judgment.  ECF No. 40, at 1.  M&T Bank attaches to its motion several exhibits for the Court to consider, including its Commercial Deposit Account Agreement ("CDAA") with Gated Enterprise, Gated Enterprise's account statements, and the Declaration of Robert H. Newton, III, M&T Bank's "Senior Vice President, Consumer Operations & Risk Market Manager."  ECF Nos. 40-2, 40-4, 40-5.  Because Plaintiffs' Third Amended Complaint does not attach or explicitly reference the account statements or the declaration, considering these documents would convert M&T Bank's Motion to Dismiss into a motion for summary judgment.  *See Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated

into the complaint.' . . . Consideration of extrinsic documents by a court during the pleading stage

of litigation . . . converts the motion to dismiss into one for summary judgment") (quoting *E.I. du*

*Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).

A court's conversion of a motion to dismiss to a motion for summary judgment "is not

appropriate when the parties have not had an opportunity to conduct reasonable discovery." *Id.*

*See also Gay v. Wall*, 761 F.2d 175, 177-78 (4th Cir. 1985) (holding that the district court abused

its discretion by converting the motion to dismiss into one for summary judgment because the

plaintiff had not had a reasonable opportunity to complete discovery); *Pegues v. Wal-Mart Stores,*

*Inc.*, 63 F. Supp. 3d 539, 544 (D. Md. 2014) (declining to convert the motion because discovery

had not yet commenced). Generally, if a party believes that summary judgment is procedurally

inappropriate because the party needs discovery to properly oppose the motion, the party should

file a Rule 56(d) affidavit informing the court of such. *Sager*, 855 F. Supp. 2d at 542-43. However,

failing to file a Rule 56(d) affidavit is not necessarily fatal where the "nonmoving party has

adequately informed the court that . . . more discovery is necessary." *Harrods Ltd. v. Sixty Internet*

*Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2022). "Even in the absence of a Rule 56(d)

affidavit," a judge maintains "complete discretion" to decline to convert a motion to dismiss to

one for summary judgment. *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md.

2017).

Here, converting M&T Bank's Motion to Dismiss to a motion for summary judgment

would be premature as discovery has not yet commenced. Although Plaintiffs did not file a Rule

56(d) affidavit, they indicate in their Opposition to M&T Bank's Motion that discovery is still

needed. ECF No. 43-1, at 4. *See Woodbury*, 286 F. Supp. 3d at 695 (declining to convert motion

even where the plaintiff did not file a Rule 56(d) affidavit); *Ali v. Md. Div. of Corr.*, No. GLR-22-

2568, 2023 WL 6445924, at *2 (D. Md. Oct. 3, 2023) (same); *ARCO Nat'l Constr., LLC v. MCM Mgmt. Corp.*, No. ELH-20-3783, 2021 WL 4148456, at *6 (D. Md. Sept. 10, 2021) (same). Accordingly, the Court declines to convert M&T's motion and will apply the 12(b)(6) standard to determine whether Plaintiffs' claims may proceed.

## II.      Plaintiffs' RICO Claims

Plaintiffs advance claims against Ms. Mulugeta and Mr. Longang under various provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(a)-(d).  ECF No. 43-3, at 19-25.  Defendants have moved to dismiss each of Plaintiffs' RICO claims.  *See* ECF Nos. 39, 69.  18 U.S.C. § 1962 makes it unlawful for any person employed by or associated with an "enterprise" to conduct or participate in the "enterprise's affairs through a pattern of racketeering activity . . . ."  In 18 U.S.C. § 1964, "Congress granted a private civil right of action to '[a]ny person injured in his business or property by reason of a violation of' the RICO provisions."  *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) (quoting 18 U.S.C. § 1964(c)) (alteration in original).  A civil RICO claim, however, "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity," *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010), not one concerned with "ordinary business contract or fraud disputes . . . ."  *Bhari Info. Tech. Sys. Priv. Ltd. v. Sriram*, 984 F. Supp. 2d 498, 502-03 (D. Md. 2013) (quoting *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988)).

Generally, to assert a civil RICO claim, a plaintiff must allege "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Morely v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  A viable RICO claim must also plead injury and proximate cause.  *Chambers*, 43 F. Supp. 3d at 588 (citing

*Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010)).  Mr. Longang generally asserts that Plaintiffs have failed to state a claim for a RICO violation.  *See* ECF No. 69.  Ms. Mulugeta more specifically argues that Plaintiffs' RICO claims fail because: (1) Plaintiffs have not pled their RICO claims with the requisite level of particularity, (2) they have failed to "establish" causation as to Ms. Mulugeta's role in the alleged scheme, and (3) their allegations "fail to meet the pattern of racketeering activity requirement."  ECF No. 39, at 2.  Because, the Court finds that Plaintiffs have failed to sufficiently allege a pattern of racketeering activity, it need not address Defendants' remaining arguments.

To plead a pattern of racketeering activity, "a plaintiff must allege (1) a minimum of two acts of racketeering activity occurring within ten years, (2) which are related, and (3) which amount to or pose a threat of continued criminal activity."  *Remsnyder v. MBA Mortg. Servs., Inc.*, No. CCB-19-0492, 2021 WL 4129230, at *4 (D. Md. Sept. 9, 2021).  18 U.S.C. § 1961(1) sets forth various predicate acts considered "racketeering activities," including mail and wire fraud, which are the racketeering activities that Plaintiffs allege in this case.  ECF No. 43-3 at ¶ 175.  When acts of fraud are the predicate acts undergirding a RICO claim, Fed. R. Civ P. 9(b)'s heightened pleading standard applies.  *Becker v. Noe*, No. ELH-18-931, 2019 WL 1415483, at *16 (D. Md. Mar. 27, 2019).  Racketeering acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).

The third requirement, continuity, can be satisfied both for enterprises that are "closed" and for those that are ongoing.  *Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 438 (D. Md. 2020).  If the alleged period of racketeering activity has come to an end, continuity exists where

there was "repeated conduct . . . extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. Alternatively, "open-ended" continuity exists where there is "repeated conduct 'that by its nature projects into the future with a threat of repetition.'" *Starr*, 509 F. Supp. 3d at 438 (quoting *id.* at 241-42). The Fourth Circuit has adopted a generally "flexible," case-by-case approach to the continuity requirement. *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1989), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996).

However, the Fourth Circuit is particularly cautious about finding a RICO "pattern" where mail and wire fraud allegations are the predicate acts because "[i]t will be the unusual fraud that does not enlist the mails and wires in its services at least twice." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (quoting *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998)) (alteration in original). Because instances of fraud tend to happen more than once when they occur, the "multiplicity of such acts 'may be no indication of the requisite continuity of the underlying fraudulent activity.'" *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (quoting *U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1266 (7th Cir. 1990)). When courts look for a "distinction between ordinary or garden-variety fraud claims better prosecuted under state law" and those that may give rise to a RICO claim, the key inquiry is whether there are "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Al-Abood ex rel. Al- Abood*, 217 F.3d at 238 (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)). "Factors relevant to this inquiry include the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." *Brandenburg*, 859 F.2d at 1185.

Applying the *Brandenburg* factors, the Court concludes that Plaintiffs have failed to allege a pattern of racketeering activity that rises above allegations of ordinary, garden variety fraud. First, Defendants' activities do not give rise to a RICO violation due to the small number of victims harmed in this case.  None of the alleged facts suggest that Defendants' activities harmed anyone other than Ms. Sol and Gated Enterprise.  Schemes to defraud a limited number of victims rarely constitute RICO violations.  *See, e.g.*, *Becker*, 2019 WL 1415483, at *21-22 (finding that a scheme targeting four victims was too narrow to warrant a RICO claim); *Menasco*, 886 F.2d at 684 (finding the continuity prong of RICO unsatisfied where there were only two victims).  Furthermore, courts generally dismiss RICO claims where there are no victims of an alleged scheme outside of the plaintiffs bringing the case.  *See Ritu Bhambhani, LLC v. Neuraxis, Inc.*, No. RDB-22-1732, 2023 WL 3688336, at *10 (D. Md. May 25, 2023) (dismissing RICO claims where the plaintiffs were unable to identify any additional victims of the alleged scheme); *AMA Sys., LLC v. 3B Tech, Inc.*, No. DLB-21-1472, 2022 WL 2133905, at *12 (D. Md. June 14, 2022) (same); *Lyon v. Campbell*, No. 93-1570, 1994 WL 369453, at *3 (4th Cir. July 15, 1994) (same).  Here, the alleged fraudulent scheme has targeted only two victims, both of whom are plaintiffs in this case.

Second, the time over which Defendants' conduct occurred weighs against Plaintiffs' RICO claims.  According to the Third Amended Complaint, the scheme unfolded over a period of approximately two years, with the first allegedly forged check signed on December 16, 2020 and the last signed on November 11, 2022.  The loan application was submitted on December 22, 2021. While there is no bright-line rule as to the amount of time the fraudulent activity must last to warrant a RICO violation, this Court and the Fourth Circuit have suggested that a period of two years is insufficient.  *See, e.g.*, *Ritu Bhambhani*, 2023 WL 3688336, at *10 (finding a "two-year period does not present 'the type of persistent, long-term fraudulent conduct' required to establish

closed-ended continuity"); *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 550 (4th Cir. 2001) (finding a duration of two years insufficient to state a RICO claim); *United States v. Pinson*, 860 F.3d 152, 163 (4th Cir. 2017) (finding a duration of two and a half years insufficient to state a RICO claim).  Treating the alleged scheme as "open ended" would not change the result, as there is no threat that the forgery scheme will continue in the future given that M&T Bank has frozen Gated Enterprise's account.

Furthermore, the alleged scheme lacks the potential for multiple distinct injuries.  Gated Enterprise has one injury: the draining of its commercial account via withdrawals made using checks with unauthorized signatures.  Ms. Sol was not injured by the withdrawals from Gated Enterprise's account; in fact, Ms. Sol cashed $9,000 in checks that allegedly contained her own forged signature.  ECF No. 12-3.  Ms. Sol has generally alleged that she was injured through the loss of business opportunities with Comfort Keepers.  The Third Amended Complaint is unclear as to how Comfort Keepers dealt differently with Ms. Sol after Mr. Longang represented that he owned 80% of Gated Enterprise and exactly how she suffered because of the alleged misrepresentation.  Given the applicable heightened pleading standard and the lack of detail in Ms. Sol's allegations regarding this injury, Plaintiffs have not sufficiently alleged a potential for multiple distinct injuries as a result of Defendants' activities.

Finally, the Court must consider whether Defendants' conduct consisted of a "single scheme" or various schemes.  Generally, where there is only one scheme that defrauded one plaintiff, there is no viable RICO claim.  *See Flip Mortg. Corp.*, 841 F.2d at 538 (holding there was no pattern of racketeering because all of the defendants' acts were part of a "single scheme"); *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987) (holding there was no pattern of racketeering for a "single, limited scheme").  The facts alleged in the Third Amended Complaint

appear to claim two distinct fraudulent schemes which Defendants perpetrated.  First, Mr. Longang fraudulently used Ms. Sol's signature and personal information to apply for a loan for Gated Enterprise and forged Ms. Sol's signature on dozens of checks to withdraw more than $700,000 from Gated Enterprise's account.  According to the Third Amended Complaint, Ms. Mulugeta assisted Mr. Longang with this scheme by knowingly accepting the loan application and checks despite their containing forged signatures.  Second, Mr. Longang allegedly forged Ms. Sol's signature on a document stating he owned 80% of Gated Enterprise, which he showed to Gated Enterprise's franchisor, causing the franchisor to distribute business opportunities to Mr. Longang instead of Ms. Sol.  The Third Amended Complaint does not include any allegations explaining what Ms. Mulugeta's role was in the second scheme; accordingly, as to the second alleged scheme, it is unclear whether Mr. Longang was acting as part of an "enterprise" as RICO requires.  *See, e.g.*, *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 842 (D. Md. 2013) ("To satisfy § 1962(c) . . . [p]laintiffs must further allege that the RICO 'enterprise' is distinct from the defendant 'person' alleged to have violated RICO").  Accordingly, Plaintiff has failed to sufficiently allege Defendants' conduct constituted multiple schemes.

Application of the *Brandenburg* factors reveals that Plaintiffs have failed to sufficiently allege a pattern of racketeering activity.  Plaintiffs' Third Amended Complaint essentially advances a claim for fraud between partners in a business relationship, which does not give rise to a RICO claim.  *Layani v. Ouazana*, No. ELH-20-420, 2021 WL 805405, at *38 (D. Md. Mar. 3, 2021).  *See also Smith v. Chapman*, No. 3:14-cv-238-MOC, 2015 WL 5039533, at *11 (W.D.N.C. Aug. 26, 2015) (finding that "a dispute between friends-turned business colleagues" was garden variety fraud and did not implicate RICO).  Accordingly, Plaintiffs have not adequately pled their RICO claims, and they will be dismissed.

### III.   Plaintiffs' State Law Claims

#### A.  Jurisdiction

Having concluded that it will dismiss Plaintiffs' RICO claims, the Court must address its ability to retain jurisdiction over the case.[3]  Jurisdiction in this case is based on Plaintiffs' RICO claims, which gave this Court federal question jurisdiction under 28 U.S.C. § 1331.  The parties in this case are not diverse; accordingly, 28 U.S.C. § 1332 does not offer an alternative means for exercising jurisdiction.   However, the Court has wide discretion to exercise supplemental jurisdiction over Plaintiffs' state law claims.  28 U.S.C. § 1367(c)(3) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction") (emphasis added).  Even where "only state-law claims remain[] after resolution of the federal question," district courts "have discretion, consistent with Article III, to retain jurisdiction."  *Osborn v. Haley*, 549 U.S. 225, 245 (2007).  *See also Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished").  In making this determination, courts may consider factors such as efficiency, whether the federal claim was made in good faith, and whether there are significant or novel state law issues. *Id.* at 112.  Because this Court is now familiar with the facts of this case and there are no novel state law issues, the Court will exercise jurisdiction over Plaintiffs' remaining state law claims.

#### B.  Plaintiffs' Claims of Negligence

---

[3] Mr. Longang's Motion to Dismiss generally argues that this Court lacks subject matter jurisdiction over the case.  ECF No. 69.  Based on Plaintiffs' RICO claims, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction. To the extent Mr. Longang's argument was made in anticipation of the Court dismissing Plaintiffs' RICO claims, the Court now addresses its jurisdiction.

Plaintiffs' Second Amended Complaint alleged two negligence-based claims against M&T Bank: Count V, a general negligence claim, and Count VI, a negligent hiring, retention, and supervision claim. ECF No. 34, at 22, 25. M&T Bank moves to dismiss both claims. ECF No. 40. To the extent that Plaintiff Sol advances the claims, M&T Bank argues that Ms. Sol lacks standing to advance them.[4] ECF No. 40-1, at 6. To the extent that Plaintiff Gated Enterprise advances the claims, M&T Bank argues that the Maryland Uniform Commercial Code ("UCC") displaces Count V and Count VI does not allege sufficient facts to state a claim for relief. *Id.* at 7, 12. In Plaintiffs' Motion for Leave to Amend, which they filed in opposition to M&T Bank's Motion to Dismiss, Plaintiffs propose to amend their Complaint to 1) advance Count V against M&T Bank on behalf of Plaintiff Sol alone; (2) remove the negligent hiring, supervision, and retention claim in its entirety (Count VI in the Second Amended Complaint); and (3) advance an additional claim under Maryland's UCC on behalf of Gated Enterprise alone. Accordingly, the only negligence claim remaining is Plaintiff Sol's claim against M&T Bank.

---

[4] M&T Bank also notes that if Count V, as brought by Ms. Sol, is not dismissed because Ms. Sol lacks standing, it should alternatively be dismissed because the Maryland UCC displaced it. ECF No. 40-1 at 7, n *4. Plaintiffs' Third Amended Complaint alters the allegations in Count V such that the UCC does not clearly displace the claim. *See* ECF No. 44-4, at 26-29. The UCC displaces a negligence cause of action based on the act of paying out forged checks, which Count V in Plaintiffs' Second Amended Complaint focused on. *See Silver v. Wells Fargo Bank*, MJG-16-382, 2017 WL 3621235, at *3 (D. Md. Aug. 23, 2017) (quoting 6C Anderson U.C.C. § 4-401:10 (3d. ed.)) ("UCC § 4-401 displaces any common-law action for negligence against a bank [for] paying a check on which the drawer's signature is forged"). By contrast, Count V in Plaintiffs' Third Amended Complaint focuses instead on M&T Bank's alleged negligence in processing loan and credit applications that Mr. Longang submitted without verifying the signature. M&T Bank's Opposition to Plaintiffs' Motion for Leave to Amend does not point to another provision of the UCC that displaces a negligence cause of action based on these acts. Accordingly, the Court focuses on M&T's argument that Ms. Sol's Count V claim should be dismissed because she lacks standing.

In the Third Amended Complaint,[5] Ms. Sol alleges that M&T Bank negligently handled and processed the credit card application, line of credit, and SBA loan application that Mr. Longang fraudulently submitted.  ECF No. 43-3, at ¶¶ 199-202.  In support of its Motion to Dismiss Ms. Sol's negligence claim, and in opposition to Plaintiffs' Motion for Leave to Amend their Complaint, M&T Bank argues that Plaintiffs' proposed amendments do not remedy two problems: (1) Ms. Sol still lacks standing to assert the claim, and (2) Ms. Sol fails to state a plausible negligence claim because she does not allege damages suffered as a result of M&T Bank's alleged negligence.  ECF No. 46, at 6.

**1. Ms. Sol Has Standing.**

Ms. Sol has standing to assert a negligence claim against M&T Bank for the processing of a credit card application, line of credit, and SBA loan application that Mr. Longang fraudulently submitted.  To establish standing, a plaintiff "must demonstrate: (1) [they have] suffered an actual or threatened injury; (2) a causal connection between the injury complained of and the challenged action; and (3) [that] the injury can be redressed by a favorable decision."  *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) (internal citations omitted).  M&T Bank argues that because the credit card application, line of credit, and SBA loan application were made in the name of Gated Enterprise and not in Ms. Sol's name, Ms. Sol lacks the necessary injury to establish standing.  ECF No. 46, at 7.  Ms. Sol argues that the injuries she personally suffered as a result of M&T Bank's negligence include (1) M&T Bank opening a line of credit and a credit card "in Ms. Sol's

---

[5] M&T Bank argues, in their Opposition to Plaintiffs' Motion for Leave to Amend, that the Court should deny Plaintiffs' Motion for Leave to Amend because of factual contradictions in the Third Amended Complaint.  ECF No. 46.  This is not, however, a legitimate basis to deny a motion for leave to amend.  *See HCMF Corp.*, 238 F.3d at 276.  Accordingly, the Court treats the Third Amended Complaint as the operative Complaint, but to the extent the amendments are futile, the claims themselves will be dismissed.

personal name," (2) paying the outstanding balance of $712.72 "on a credit card created with Ms. Sol's personal information," (3) M&T Bank's reliance on her forged signature and personal information in approving the loans, and (4) Ms. Sol's personal guarantee of the SBA loan.  ECF No. 43-1, at 3; ECF No. 43-3, at ¶ 44.

Plaintiff has sufficiently alleged that M&T Bank's negligence caused Ms. Sol an injury. M&T Bank correctly asserts that, under Maryland law, "a member of an LLC . . . lacks standing to assert the LLC's claims." *Callender v. Callender*, No. TDC-17-3249, 2018 WL 3609536, at *3 (D. Md. July 26, 2018) (citing *Gen. Tech. Applications, Inc. v. Extro LTDA*, 388 F.3d 114, 119 (4th Cir. 2004)).  Ms. Sol must have personally suffered an injury to have standing.  Ms. Sol first alleges that she was personally injured by being named a guarantor of the SBA loan.  In Maryland, "a guarantor of a loan is without standing to sue the lender for alleged fraudulent misconduct in making a loan to the borrower, absent an independent harm to the guarantor." *Wincopia Farms, LP v. G&G LLC*, No. 07-15899-JS, 2011 WL 1237651, at *1 (Bankr. D. Md. Mar. 31, 2011); *Donnelly v. Branch Banking & Tr. Co.*, 91 F. Supp. 3d 683, 694 (D. Md. 2015).  Thus, the status of being a guarantor of a fraudulently obtained loan is not, itself, an injury for the purposes of standing; Ms. Sol needs a more concrete injury.  Second, Ms. Sol alleges that M&T opened a line of credit, a credit card, and a SBA loan in Ms. Sol's personal name.[6]  The fraudulent opening of a credit card in a plaintiff's name is a sufficiently concrete injury.  *See Hutton v. Nat'l Bd. of Exam'rs*

---

[6] M&T Bank argues that only a credit card and a SBA line of credit were opened and both were in Gated Enterprise's name.  For the purposes of a motion to dismiss, the Court accepts as true the facts as presented in the Complaint.  As discussed, the Court declines to convert M&T Bank's Motion to one for summary judgment in advance of any discovery in the case.  See *Sanders v. Callender*, No. DKC-17-1721, 2019 WL 3717868, at *2 (D. Md. Aug. 6, 2019) (quoting *E.I. du Pont de Nemours*, 637 F.3d at 448) ("Ordinarily, summary judgment is inappropriate if the parties have not had the opportunity for reasonable discovery." (internal citations and quotation marks omitted)).

*in Optometry, Inc.*, 892 F.3d 613, 623-24 (4th Cir. 2018) (finding that an injury-in-fact was sufficiently alleged where the plaintiffs' personal information was used to open fraudulent bank accounts in their names and they received "unsolicited Chase Amazon Visa credit cards"); *see also Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 363, 366 (M.D. Pa. 2015) (finding there was no injury in a case where the plaintiffs' personal information was stolen because there was "no allegation that the hacker caused a new bank account or credit card to be opened in any of [the p]laintiffs' names"). Accordingly, Plaintiff has asserted at least one injury sufficient for standing regarding the credit applications. M&T Bank has not contested the causation or redressability elements of standing.

### 2. Ms. Sol Has Alleged Damages.

Alternatively, M&T Bank argues that the Court should dismiss Ms. Sol's negligence claim because she has failed to plausibly allege any damages the bank caused by approving applications for a credit card, an SBA loan, and a line of credit. ECF No. 46, at 6-7. Plaintiff's Third Amended Complaint alleges that the damages she suffered as a result of M&T's negligence include several categories of nonmonetary damages as well as "stolen monies in excess of $75,000." ECF No. 43-3, at ¶ 207. Though the facts in the Third Amended Complaint likely fall short of alleging $75,000 worth of damages, Plaintiff has, at least, sufficiently alleged $712.72 in damages for the payment of an allegedly fraudulently opened credit card. M&T Bank offers no support for its assertion that Ms. Sol cannot claim this amount as damages. ECF No. 46, at 7. Although it is a minor amount, these alleged damages allow Ms. Sol's negligence claim against M&T Bank to survive the Motion to Dismiss.

### C. Plaintiffs' Unfair and Deceptive Trade Practices Claim

Plaintiffs also advance a claim against Ms. Mulugeta and M&T Bank for unfair and deceptive trade practices under § 13-303 of the Maryland Consumer Protection Act ("MCPA"). ECF No. 43-3, at 28.  Plaintiffs' Second Amended Complaint focused this claim on the fact that Ms. Mulugeta and M&T Bank allowed Mr. Longang access to Gated Enterprise's account despite the fact that M&T Bank never processed paperwork authorizing Mr. Longang to access the account.  ECF No. 34, at 28.  Ms. Mulugeta and M&T Bank each move to dismiss this claim because the account that Mr. Longang was accessing is not a type of account within the scope of the MCPA, which protects only consumer bank accounts.  Md. Com. Law § 13-101(c).  Plaintiffs respond to Defendants' argument by proposing to amend their Complaint such that the unfair and deceptive trade practices claim is brought only on behalf of Plaintiff Gated Enterprise and concerns Ms. Mulugeta and M&T Bank's acceptance of forged loan applications from Mr. Longang.  ECF Nos. 43, 44.

Plaintiff's amendment to its MCPA claim would be futile.  First, regardless of Plaintiff's factual allegations in support of its MCPA claim, the regulatory scope of the MCPA remains limited to "consumer goods, consumer services, consumer realty, or consumer credit."  Md. Com. Law § 13-101(c).  "Consumer" goods, services, realty, and credit involve primarily "personal, household, family, or agricultural purposes," and importantly, does not include business purposes. Md. Com. Law § 13-101(d); *Penn-Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 909-10 (D. Md. 1997).  Plaintiff's account with M&T Bank was a business account, and likewise, the loan that Plaintiff references in the Third Amended Complaint was a small business loan.  Accordingly, the conduct of M&T Bank and Ms. Mulugeta that Plaintiff challenges is outside of the scope of the MCPA.  Furthermore, § 13-303 of the MCPA creates a private right of action for various "unfair, abusive, or deceptive trade practice[s]," but none of the thirteen enumerated categories of such

21

trade practices laid out in § 13-301 appear to apply to the actions of Ms. Mulugeta and M&T Bank's processing of Mr. Longang's loan application.  *See* Md. Com. Law §§ 13-301–13-303. Accordingly, Plaintiffs have failed to state a claim under the MCPA.

### D.  Gated Enterprise's Maryland Uniform Commercial Code Claim

Plaintiffs' Third Amended Complaint adds a new claim on behalf of Gated Enterprise against M&T Bank under §§ 3-403–3-406 of the Maryland UCC.  ECF No. 43-3, at 29.  In Opposition to Plaintiffs' Motion for Leave to Amend the Complaint, M&T Bank argues that the amendment is futile because (1) Plaintiff Gated Enterprise has not alleged any damages from the claim, and (2) even liberally construing the Third Amended Complaint under a more appropriate section of the UCC, the claim is time-barred.  ECF No. 46, at 9-11.

### 1.  Gated Enterprise Has Sufficiently Alleged Damages.

M&T Bank first argues that Plaintiffs' proposed amendment would be futile because the claim, even as amended, fails to sufficiently allege damages.  ECF No. 46, at 9.  Specifically, M&T Bank highlights language in the Third Amended Complaint suggesting Gated Enterprise bases its UCC claim on the depositing of unauthorized checks into Gated Enterprise's account.  *Id.* However, Plaintiff makes allegations under an alternative section of the UCC for M&T Bank's payment of allegedly forged checks issued from Gated Enterprise's account.  *See* ECF No. 43-3, at ¶ 224 ("Defendant M&T's failure to exercise ordinary care before accepting and paying the forged checks was a substantial factor that directly and proximately caused Gated Enterprise to incur financial losses in excess of $700,000").  The Third Amended Complaint alleges that "about 178" checks were "deposited in Gated Enterprise's account" with "forged signatures designed to look like that of Ms. Sol, though there were several different styles of signatures, and at times no signature at all."  *Id.* at ¶ 113.  The Court's review of these checks – which were attached to the

First Amended Complaint – suggests that rather than being deposited into Gated Enterprise's account, the checks were made out to others and paid from the funds of Gated Enterprise's account. *See* ECF No. 12-3.  Md. Com. Law § 4-401 provides for a cause of action "against a bank [for] paying a check on which the drawer's signature is forged."  *Silver v. Wells Fargo Bank, N.A.*, No. MJG-16-382, 2016 WL 6962862, at *3 (D. Md. Nov. 29, 2016) (quoting 6C Anderson U.C.C. § 4-401:10 (3d. ed.)).

Reading the claim as one under § 4-401 for the allegedly unauthorized checks paid from Gated Enterprise's account, Plaintiff has clearly alleged damages.  M&T's acceptance and cashing of 178 checks allegedly containing Ms. Sol's forged signature resulted in unauthorized payments from Gated Enterprise's account totaling over $700,000.  Accordingly, the Third Amended Complaint sufficiently alleges damages resulting from violations of the UCC.

### 2.   Gated Enterprise's UCC Claim, as Alleged, is Not Time-Barred.

M&T Bank alternatively argues that any claim made under § 4-401 of the Maryland UCC is time barred.  ECF No. 46, at 10-11.  Article 4 of Maryland's UCC establishes the customer's duty to discover and report unauthorized items.  Md. Com. Law § 4-406(f).  If a customer "does not within 12 months after the statement or items are made available to the customer . . . discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration," regardless of the bank's care or lack thereof.  *Id.*  Further, the UCC allows banks to shorten the discovery and reporting period in § 4-406(f).  *Silver*, 2016 WL 6962862, at *3.  M&T Bank's argument that Gated Enterprise's claim is time barred depends on materials beyond those attached to or explicitly referenced in the Complaint.  Specifically, M&T Bank relies on statements from Gated Enterprise's account and the declaration of a M&T Bank employee to establish that Ms. Sol received notice of the checks'

payment and failed to notify the bank in a timely manner.[7]  *See* ECF Nos. 40-2; 40-3.  Because Plaintiff's complaint does not attach or incorporate these materials, these materials cannot be considered when resolving M&T Bank's Motion to Dismiss.  *Zak*, 780 F.3d at 606.

M&T Bank's argument mirrors that of the defendant bank in *Silver v. Wells Fargo Bank, N.A.*, in which this Court declined to consider similar exhibits upon a motion to dismiss.  2017 WL 3621235, at *4-5.  In *Silver*, the plaintiff advanced claims against its bank based on the bank's honoring of allegedly forged checks.  *Id.*  The defendant bank attached the customer's account agreement to its motion to dismiss and argued that the account agreement's terms precluded the plaintiff from asserting breach of contract claims "based upon unauthorized signature or fraud" because the plaintiff had been late to report the alleged fraud to the bank.  *Id.* at *4.  This Court rejected the argument because that the bank's affirmative defense required consideration of the account agreement and other materials which were not integral to the complaint.  *Id.* at *5.  Similarly, M&T's affirmative defense that Plaintiff is time-barred from asserting a UCC claim depends upon consideration of the bank employee's declaration regarding Plaintiff's receipt of monthly account statements.  Accordingly, the Court cannot presently conclude that Plaintiff's UCC claim is time barred.

### E.  Plaintiffs' Tortious Interference Claims

In Plaintiffs' Second Amended Complaint, they asserted two tortious interference claims: tortious interference with prospective advantage against Mr. Longang (Count VIII), and tortious

---

[7] Although M&T Bank argues that Plaintiff's Complaint "incorporates by reference the Commercial Deposit Account Agreement between Plaintiff Gated Enterprise, the checks at issue, and the account opening documents for Gated Enterprise's business bank account" it makes no such argument regarding the declaration or the account statements.  ECF No. 46, at 6 n. 6.  These materials could only be considered if the Court converted the Motion to one for summary judgment, which it declines to do.

interference with contractual relations against Ms. Mulugeta (Count IX).  ECF No. 34.  Mr.

Longang's Motion to Dismiss does not address this specific claim brought against him, but

generally argues that Plaintiffs fail to state a claim upon which relief can be granted.  ECF No. 69.

Ms. Mulugeta's Motion to Dismiss argues that Count IX should be dismissed because it lacks

particularity and fails to allege causation.  ECF No. 39-1, at 21.  Plaintiffs' Third Amended

Complaint drops the tortious interference claim against Ms. Mulugeta, and their Opposition to Ms.

Mulugeta's Motion to Dismiss does not address her arguments in favor of dismissal of the claim.

Accordingly, Plaintiffs have conceded their tortious interference with contractual relations claim

against Ms. Mulugeta.  *See, e.g.*, *Kitchings v. Shelton*, PWG-17-882, 2018 WL 398285, at *6 (D.

Md. Jan. 12, 2018) ("When a defendant's motion to dismiss a complaint states specific deficiencies

that warrant dismissal[,] . . . it is the plaintiff's obligation to respond substantively to address them

[and] [f]ailure to [do so] . . . constitutes abandonment of those claims.").  Accordingly, the Court

need only address whether Plaintiffs' claim for tortious interference with prospective advantage

against Mr. Longang survives.

To state a claim for tortious interference with prospective advantage under Maryland law,

a plaintiff must allege:

> (1) intentional and willful acts; (2) calculated to cause damage to the
> plaintiff[] in their lawful business; (3) done with the unlawful
> purpose to cause such damage and loss, without right or justifiable
> cause on the part of the defendant[] (which constitutes malice); and
> (4) actual damage and loss resulting.

*Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 261 (4th Cir. 2000) (quoting

*Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994)).

Plaintiffs' tortious interference claim alleges that Mr. Longang forged Ms. Sol's signature on

documents stating that Mr. Longang owned 80% of Gated Enterprise and used those documents to

persuade Comfort Keepers to "cease its contract and operation with Ms. Sol . . . ."  ECF No. 43-3, at ¶ 228.

Plaintiffs have sufficiently pled a claim for tortious interference with prospective advantage.  Accepting the allegations in Plaintiffs' Third Amended Complaint as true, Mr. Longang's forging of Ms. Sol's signature was an intentional and willful act, "independently wrongful or unlawful . . . apart from its effect on the plaintiff's business relationships." *Alexander & Alexander, Inc.*, 650 A.2d at 271; *see also Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994) ("To establish tortious interference with prospective contractual relations, it is necessary to prove both tortious intent and improper or wrongful conduct").  Plaintiffs' Third Amended Complaint, though somewhat unclear on the matter, alleges that because Mr. Longang represented to Comfort Keepers that he, rather than Ms. Sol, was the owner of Gated Enterprise, Comfort Keepers distributed business opportunities to Mr. Longang that would have otherwise been offered to Ms. Sol.  While the Third Amended Complaint lacks some detail, it sufficiently makes a claim for tortious interference with prospective advantage for the purpose of a Motion to Dismiss.  The Third Amended Complaint includes allegations of what business opportunities were lost, to whom those business opportunities were steered to, and what the unlawful, malicious act was.  *See Allied Fire Prot., Inc. v. Thai*, No. PWG-17-551, 2017 WL 4354802, at *10 (D. Md. Oct. 2, 2017) (finding a tortious interference claim unable to survive a motion to dismiss because it did not indicate "what business opportunities were lost, to whom [the defendant] 'steered' the supposed business opportunities to, . . . nor any indication of [the defendant's] unlawful acts or malicious purpose.").  Accordingly, Plaintiffs' tortious interference with prospective advantage claim survives Mr. Longang's Motion to Dismiss.

## F.  Plaintiffs' Request for Equitable Accounting

Plaintiffs additionally allege a claim for equitable accounting against Mr. Longang.  ECF No. 43-3, at 32.  An accounting, under Maryland law, is a remedy rather than an independent cause of action.  *Orteck Intern. Inc. v. Transpacific Tire Wheel, Inc.*, 704 F. Supp. 2d 499, 521 (D. Md. 2010).  Where a plaintiff has alleged independent causes of action that survive a motion to dismiss, equitable accounting may be available.  *See West v. Koehler*, No. RDB-11-3051, 2012 WL 868657, at *7 (D. Md. Mar. 13, 2012) (quoting *IFAST, Ltd. v. All. for Telecomm. Indus. Sols., Inc.*, No. CCB-06-1088, 2007 WL 3224582 (D. Md. Sept. 27, 2007)) ("an accounting is . . . a remedy, not a separate cause of action, and not available absent some independent cause of action").  Equitable accounting is available only where "the remedies at law are inadequate."  *P.V. Props., Inc. v. Rock Creek Vill. Assocs. Ltd. P'ship*, 549 A.2d 403, 409 (Md. App. 1988) (citing *Nagel v. Todd*, 45 A.2d 326, 382 (Md. 1946)).  Instances in which legal remedies are inadequate include:

> First, where there are mutual accounts between the plaintiff and the defendant; [s]econd, where the accounts are all on one side, but there are circumstances of great complication, or difficulties in the way of adequate remedy at law; and third, where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account.

*Nagel*, 45 A.2d at 382.  The Third Amended Complaint does not allege a fiduciary relationship between Ms. Sol and Mr. Longang; rather, it asserts that no formal partnership was ever established between the two.  *See, e.g., Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 17 A.3d 155, 162 (Md. App. 2011) ("A fiduciary relationship is presumed to exist as a matter of law . . . between partners in a partnership . . .").  Nonetheless, the nature of the account at issue in this case may make an accounting appropriate.  Though Ms. Sol was the only authorized user of the Gated Enterprise account, the Third Amended Complaint alleges that Mr. Longang accessed the account and prevented Ms. Sol from accessing it.  The Third Amended Complaint also alleges that, despite managing Ms. Sol's business, Mr. Longang never provided Ms. Sol with financial reports or access

to the business's financial information.  ECF No. 43-3, at ¶ 233.  In light of these allegations and

Mr. Longang's failure to advance any specific arguments as to why Plaintiffs are not entitled to an

accounting, Plaintiffs request for equitable accounting survives Mr. Longang's Motion to Dismiss.

### G.  Plaintiffs' Intentional Misrepresentation Claim

Next, Plaintiffs advance a claim for intentional misrepresentation against Mr. Longang and

Ms. Mulugeta.   ECF No. 43-3, at 33.   Ms. Mulugeta argues that Plaintiffs' intentional

misrepresentation claim should be dismissed for failing to meet Fed. R. Civ. P. 9(b)'s particularity

requirement and because Plaintiffs have failed to allege but-for causation.  ECF No. 39, at 23.  Mr.

Longang moves to dismiss for failure to state a claim.  ECF No. 69.

To state a claim for intentional misrepresentation, a plaintiff must allege:

> (1) that the defendant made a false representation to the plaintiff, (2)
> that its falsity was either known to the defendant or that the
> representation was made with reckless indifference to its truth, (3)
> that the misrepresentation was made for the purpose of defrauding
> the plaintiff, (4) that the plaintiff relied on the misrepresentation and
> had the right to rely on it, and (5) that the plaintiff suffered
> compensable injury resulting from the misrepresentation.

*Smith v. Kennedy Krieger Inst., Inc.*, No. 2241, Sept. Term, 2014, 2017 WL 1076481, at *32 (Md.

App. Mar. 22, 2017) (quoting *Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008)).

#### 1.  Defendant Mulugeta

Plaintiffs base their intentional misrepresentation claim against Ms. Mulugeta on Ms.

Mulugeta's statements that "Longang was added to Gated Enterprise's bank account" and

"Longang['s] paperwork did not go through."  ECF No. 43-3, at ¶¶ 238-39.  Plaintiffs' Third

Amended Complaint merely recites the elements of intentional misrepresentation, supported only

by conclusory statements.  Plaintiffs allege that Ms. Mulugeta knew or should have known that

her statement that Mr. Longang was added to the account was false, but do not allege any facts

demonstrating how or why she should have known such.  As for Ms. Mulugeta's second statement that Mr. Longang's paperwork did not go through, Plaintiffs have not alleged how this statement was a false representation other than conclusively alleging such.  In fact, any allegation that this statement was false would contradict the rest of the Complaint, which alleges that Plaintiff was harmed in various ways due to Mr. Longang's unauthorized access to the account.  Likewise, Plaintiffs have not alleged facts demonstrating that they relied on either of Ms. Mulugeta's statements.  Because Plaintiffs have not alleged facts supporting their intentional misrepresentation claim against Ms. Mulugeta, they have not stated a plausible claim against Ms. Mulugeta for intentional misrepresentation.

### 2.  Defendant Longang

Plaintiffs base their intentional misrepresentation claim against Mr. Longang on (1) Mr. Longang's purported forging of Ms. Sol's signature on various checks, loan and credit applications, and a document transferring ownership of Gated Enterprise to Mr. Longang; and (2) Mr. Longang's allegedly false statement to Ms. Sol that he owns Gated Enterprise and that Ms. Sol was only an employee.  *Id.* at ¶ 242.  Again, beyond conclusively stating so, Plaintiffs fail to allege that they relied to their detriment on either of Mr. Longang's false representations.  Based on the present allegations and attachments, Plaintiffs did not rely on the allegedly forged documents except to the extent Ms. Sol herself cashed checks on which Mr. Longang had forged her own signature.  The Complaint also fails to address how Ms. Sol relied on Mr. Longang's representation that he owned Gated Enterprise and that she was merely an employee.  Accordingly, Plaintiffs have failed to allege facts sufficient to state a claim.

### H.  Plaintiffs' Request for Equitable and Injunctive Relief

Finally, Plaintiffs' Third Amended Complaint seeks a permanent injunction against Mr. Longang. ECF No. 43-3, at 35-37. As with Plaintiffs' request for an equitable accounting from Mr. Longang, an injunction is a remedy, not an independent cause of action. *Adams v. Am. Fed'n of State*, 167 F. Supp. 3d 730, 751 (D. Md. 2016) ("a restraining order 'is not a cause of action but rather an equitable remedy'") (quoting *Sherstad v. Countrywide Home Loans, Inc.*, No. 2:10-cv-946 JCM, 2010 WL 3021614, at *2 (D. Nev. July 29, 2010)); *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 682 n. 1 (D. Md. 2001) ("a request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts"). Nonetheless, having pled other substantive causes of action, Plaintiffs may seek such equitable relief. *See Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 573-74 (D. Md. 2012) (acknowledging, on a motion to dismiss, that the plaintiff's claim for an injunction was not an independent cause of action but allowing the request to proceed because the plaintiff had adequately pled their substantive claims).

## CONCLUSION

For the foregoing reasons, M&T Bank's Motion to Dismiss is GRANTED, in part, and DENIED, in part; Ms. Mulugeta's Motion to Dismiss is GRANTED; and Mr. Longang's Motion to Dismiss is GRANTED, in part, and DENIED, in part. Plaintiffs' Motion for Leave to Amend is GRANTED, only as to the claims that survive Defendants' Motions to Dismiss. In summary, the following counts may proceed: Count V, Ms. Sol's negligence claim against M&T Bank; Count VII, Gated Enterprises' Maryland UCC claim against M&T Bank; Count VIII, all Plaintiffs' claims for tortious interference with prospective advantage against Mr. Longang; Count IX, all Plaintiffs' request for equitable accounting against Mr. Longang; and Count XI, all Plaintiffs' request for equitable and injunctive relief against Mr. Longang. All other claims are dismissed.

The parties shall file a Joint Status Report within fourteen days with a Proposed Schedule or stating why a Scheduling Order is inappropriate at this time.

Date: January 29, 2024

_____/s/_____

Ajmel A. Quereshi
U.S. Magistrate Judge
